Scott, J.
The decision of this case depends on the force and effect of the deed of conveyance of March 30, 1831, executed by John Pollock, senior, and wife, to their son, James *Pollock. If by that conveyance the grantee took an estate in fee simple, or the power, as against “the heirs of his body,” of aliening and conveying the premises in fee simple, then it is clear that the plaintiffs, who claim only under that conveyance, as the special heirs therein named, are divested of all title by a regular and valid conveyance from the grantee thereinn amed, and under which the title in fee simple has passed, through several mesne conveyances, to the present defendant. But if that conveyance gave the grantee only an estate for life, with remainder in fee to his children, or if it gave him an estate in tail, with the fee so limited to particular heirs that the grantee could not, as against them, alien the inheritance, then it is equally clear, that upon the death of the grantee, the plaintiffs, as “ the heirs of his body,” became entitled to the possession of the premises which they are now seeking to recover.
John Pollock, senior, is the common source from whom both parties derive title. The deed from him to his son, James Pollock, under which both parties claim, purports, for a good and valuable consideration, to grant and convey the premises in controversy, “to the said James Pollock, the heirs of his body, and assigns, forever.” The habendum is in similar terms: “to have and to hold,” etc., “to the onxy proper use, benefit, and behoof of the said James Pollock and the heirs of his body, and assigns, forever.” The covenants of warranty are made “with the said James Pollock, the heirs of his body, executors, administrators, and assigns.” This form of expression occurs twice in the covenants, and finally the premises and appurtenances are forever warranted “unto the said James Pollock, the heirs of his body, and assigns.”
The terms of this deed are such as to vest in the grantee an estate of inheritance; the title conveyed is transmissible, by its terms, to the heirs of the grantee’s body, and as there is no limitation prescribed for the duration of the grant, it may endure forever. It is therefore an estate in fee. Had the conveyance been to the grantee, his heirs, and assigns forever, without designating any particular class of heirs, it would have been in the usual form of a conveyance *411 in fee simple, and it must, beyond doubt, have so operated. But *here the terms of the grant expressly limit the inheritance to a particular class of heirs, to wit, “to the heirs of his body,” and thus exclude collateral heirs. These words of limitation we are not at liberty to disregard. They are frequently repeated throughout the deed in connection with the name of the grantee, and we can not assume that they were used undesignedly, or give a construction to the deed which shall disregard them. These are not words of form, but of substance, and seem to have been inserted in the grant, and carefully repeated throughout the deed for a purpose and design. Giving effect then to these words, it would seem very clear that they create an estate tail. This results from the very definition of an estate tail. Bouv. Dic.; 2 Wend. Bl. 110-115; 4 Kent. Com. 12; Prest, on Estates, 355; Cruise, tit. 2, chap. 1, sec. 12.
By force of the words “ heirs of his body ” we think the grantee clearly took an estate in fee tail. And this effect is not modified by the word “ assigns,” which follows; for this word only imports that the estate granted may be transferred, and can not operate to enlarge the grant, or defeat its express limitations.
Without entering into a long discussion of the origin and history of estates tail, it may suffice to say, that after the enactment of the statute de donis, of Westminster 2, 13 Edw. I., chap. 1, it was held by the courts of England, that where the tenant had what, at common law, was regarded as a conditional fee simple,- which would become absolute upon the birth of issue, he now held by force of this statute an estate tail; and that the donor had a reversion or fee simple expectant on the failure of the issue in tail. The tenant in tail could no longer alien, upon his having issue, but the feud was to remain to the issue according to the form of the gift, and to revert to the grantor or his heirs, on failure of issue. Among the incidents of this species of estate were these: that the tenant in tail was not chargeable with waste, and the wife had her dower, and the husband his curtesy in the estate tail. Long afterward, the judges discovered an ingenious method of cutting off or docking the entail, by a common recovery, which is the only mode of conveyance by which a tenant in tail can ^effectually bar the entail in that country. 4 Kent’s Com. 12-14. “Estates tail,” says Kent, “were introduced into this country with the other parts of the English jurisprudence, and they subsisted in full force before *412 -our revolution, subject equally to the power of being barred by a fine, or common recovery.” Yol. 4, p. 14.
In most of the United States, the common law relating to entailments is either entirely abolished, or materially modified. In Massachusetts, where an entail might be barred by a common recovery, or by a conveyance made according to the special provisions of a statute on that subject, it has been held that a common deed effecuted by tenant in tail, not in conformity with the statute, is not sufficient for that purpose; and that the deed of the tenant in tail can not operate by way of estoppel on the heirs, because “ they do not claim the estate as coming from him as its source, but an estate coming through him as special heir, which he can not intercept, except in the modes provided by law.” Perry v. Kline, 12 Cushing, 118. In several states entailments are expressly prohibited; and, in others, estates tail are converted by statute into estates in fee simple, in the hands of the first donee in tail. 1 Scribner on Dower, 268-270 ; 4 Kent, 15, notes.
In Ohio, estates tail seem always to have been recognized, and to a certain extent tolerated. But the method of barring the entail, by a common recovery, is unknown in this state. By the act of December 17, 1811, “to restrict the entailment of estates,” (S. & C. Stat. 550) it was enacted: “ That no estate in fee simple, fee tail, or any lesser estate in lands or tenements, lying within this state, shall be given or granted by deed or will to any person or persons but such as are in being, or to the immediate issue or descendants of such as are in being, at the time of making such deed or will; and that all estates given in tail, shall be and remain an absolute estate in fee simple to the issue of the first donee in tail.” This statute recognizes the first donee in tail as holding an estate for life only, as tenant in tail; and does not convert the estate into a fee simple, till it reaches the hands of his issue. We have also the act of April 4, 1859, “to provide for the sale or lease of estates tail in certain cases.” S. & C. 550. This act gives *to the courts of common pleas of the state, jurisdiction, on application of the first donee in tail, or for life, to authorize the sale of entailed estates, and estates for life with remainder over to any other person or persons, when satisfied that the sale would be for the benefit of the applicant, and do no substantial injury to the heirs in tail, or others in succession, reversion or remainder. But it carefully protects the rights of the issue in tail, by giving to the proceeds of sale the same *413 character for purposes of descent, etc., as the estate sold; and directs-that the moneys arising from sales shall pass according to the terms of the deed, will, or other instrument creating the estate. Various provisions in this act evince the sedulous care with which the rights of those who are entitled to the inheritance, after the first, donee in tail or for life, have been guarded; and the whole act evidently proceeds on the idea that, without such legislation, the first donee in tail could not sell and convey the estate in fee simple.
Our attention has been called by counsel, to the case of Carroll v. Lessee of Olmstead, 16 Ohio, 251. We do not understand the decision in that case to rest on the ground, either that we have no estates tail in Ohio, or that the entail maybe barred by an ordinary conveyance in fee simple, executed by the first donee. The question in the case was upon the constitutionality of a special act of the legislature, authorizing a sale by trustees of certain lands held in tail by devisees under the will of Aaron Olmstead. The court, held that, under the circumstances recited in the preamble of the-act, it was competent for the legislature to authorize a sale and conveyance of the premises in fee simple, and that the purchasers took a good title as against the devisees or any person claiming under them. That act, as is shown by its preamble, was supposed to be-necessary to prevent the property entailed from being totally lost, as well to the devisees as to their issue in tail; it secured the proceeds of the sales to the issue o'f the devisees after their death; and the whole enactment was made on the ground that, without such authority, the devisees could not sell and convey the premises, by reason of the entailment. 11 Ohio L. 22.
We agree with counsel for the defendant, that the words, “ heirs *o/ his body,” used in the conveyance to James Pollock, are words of limitation, not of purchase; and that his issue take, not as purchasers, but by descent; but this is to be understood as meaning that the issue takes the estate 11 as an estate of inheritance and as being of the prescribed line of issue or inheritance, and not by direct descent from his immediate ancestor; since he takes, per formant doni, from the person who first created the estate.” Washburn on Real Prop. 79, n. 1; 1 Cruise Dig. 83.
Though the defendant here claims under a conveyance from James Pollock, the tenant in tail, with covenants of warranty, yet the plaintiffs are not thereby estopped or barred of their action,_ because their title does not come from the warrantor as its source *414 Perry v. Kline, supra. Nor does it alter the case that they have received assets from the estate of the warranting ancestor. Modern covenants of warranty are regarded as personal only, and the remedy, on eviction, is by an action on the covenant against the grantor, or his real or personal representatives, to recover in damages for the land lost. 4 Kent, 470, 471.
We are of the opinion, that on the case made by the deed offered in evidence by the plaintiffs, and the agreed statement of facts, the plaintiffs were ■ entitled to judgment, and that the court of common pleas erred in holding otherwise, and in overruling th© motion for a new trial. The judgment of that court is therefor© reversed, and the cause remanded for further proceedings.
Day, C. L, and White, Welch, and Brinkerhoee, JJ., concurred.